UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILLIP SANDERS,<br><br>            Plaintiff,<br><br>    v.<br><br>MARGARET MIMS, et al.,<br><br>            Defendants. | Case No.: 1:20-cv-00634-JLT-SAB (PC)<br><br>SECOND SCREENING ORDER GRANTING PLAINTIFF ONE FINAL OPPORTUNITY TO AMEND THE COMPLAINT<br><br>(ECF No. 22) |

Plaintiff Phillip Sanders is proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Plaintiff's first amended complaint, filed January 3, 2022.

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by individuals who are proceeding in forma pauperis. See Calhoun v. Stahl, 254 F.3d 845 (9th Cir. 2001) (per curiam); 28 U.S.C. § 1915(e)(2). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief...." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but

1

1   "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ). Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-677; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-1021 (9th Cir. 2010).

Prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, but the pleading standard is now higher, Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted), and to survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## COMPLAINT ALLEGATIONS

On April 20, 2018, Plaintiff was booked into the Fresno County Jail and surrendered all of his personal property.  A medical assessment was conducted by registered nurse Janet Smith before Plaintiff was assigned to a bunk.  Prior to his arrest, Plaintiff was on social security disability for degenerative disc as well as bronchial asthma.  Plaintiff's medical history should be in the computer from his previous arrests.  Plaintiff requested pain medication for degenerative disc as well as an asthma pump for chronic bronchial asthma.  Smith reviewed the medical history and added the pain medication to his chart.  Smith then advised Plaintiff that asthma pumps were no longer issued to inmates because of misuse, and Plaintiff was advised if he had any tightening in the chest and needed treatment to inform the floor officer and request a breathing treatment at the infirmary.

As a result of the excitement of the arrest, Plaintiff requested to go to the infirmary during the medical interview and received an oxygen level test around 90 percent and a full breathing treatment.

///

After Plaintiff returned to his bunk, he received his pain medication during medical call but he was not provided asthma medication. Smith did not enter the asthma inhaler prescription in the medical computer.

Almost every other night, Plaintiff began to get a tightness in his chest and went to the infirmary for numerous breathing treatments. Plaintiff later discovered that the wool blankets triggered his asthma.

On or around April 25, 2018, Plaintiff filed an inmate request slip requesting an inhaler and a non-wool blanket. After getting no response for two days, a second incident happened on April 27, 2018, with correctional officer Vang. On this date, the count took an extremely long time to clear as there was a riot on the fourth level between two rival gangs causing movement to be restricted on all levels. Plaintiff made numerous attempts to go to the infirmary on April 27, 2018, and officer Vang told Plaintiff the infirmary was completely full and because of the riot he had to wait. When Plaintiff went to the infirmary all the cells were empty and medical staff said they had little to no inmates in the cell for hours.

On April 29, 2018, Plaintiff filed a grievance requesting that an inhaler be placed in the lock box on every floor. After the grievance was filed, the infirmary doctor called Plaintiff for a chest x-ray on or about May 1, 2018 and threatened confinement in the medical cell until an x-ray was conducted. When the result of the x-rays were reviewed, the doctor called Plaintiff to the office and determined that Plaintiff had narrow passages for which he received another breathing treatment. The doctor also prescribed that the inhaler be placed on the medical chart for daily medical treatment. To make things worse, the registered nurse forgot to place the inhaler in Plaintiff's medical chart got three hours. After Plaintiff waited in the dayroom for about an hour and a half, a fight broke out and everyone was ordered to the ground. A female officer utilized pepper spray to break up the fight which triggered Plaintiff's asthma. When Plaintiff returned to his cell he immediately pushed the medical alert button and advised that he was in need of his asthma inhaler. After about thirty minutes the nurse provided Plaintiff with his inhaler.

///

///

3

# III.

# DISCUSSION

### A. Denial of Medical Treatment

A pretrial detainee's rights arise under the Fourteenth Amendment's Due Process Clause whereas a convicted prisoner's rights arise under the Eighth Amendment's Cruel and Unusual Punishments Clause. See Bell v. Wolfish, 441 U.S. 520, 535 (1979). A deliberate indifference test applies to both a pretrial detainee's claim and a prisoner's claim, but for a pretrial detainee it is an objective test, rather than the subjective test which applies to a prisoner's claim. See Gordon v. County of Orange, 888 F.3d 1118, 1122 & n.4 (9th Cir. 2018). Because Plaintiff claims involves the conditions at the Fresno County Jail, the Court applies the more stringent objective deliberate indifference standard. Under this standard, a pretrial detainee must allege:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

Gordon v. County of Orange, 888 F.3d 1118, 1125 (9th Cir. 2018). With regard to the third element, the defendant's conduct must be objectively unreasonable —"a test that will necessarily turn[ ] on the facts and circumstances of each particular case." Id. (internal citations and internal quotation marks omitted). Thus, the plaintiff must "prove more than negligence but less than subjective intent— something akin to reckless disregard." Id.

#### 1. Monell Claim for Inadequate Medical Care

To state a claim for municipal liability under Section 1983, a plaintiff must allege: (1) that the plaintiff was deprived of a constitutional right; "(2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997) (internal quotation marks and citation omitted). There can be no municipal liability without an underlying constitutional violation. Scott v. Henrich, 39 F.3d 912, 916 (9th Cir. 1994). A Monell claim can proceed under three theories of municipal liability: "(1) when

official policies or established customs inflict a constitutional injury; (2) when omissions or failures to act amount to a local government policy of deliberate indifference to constitutional rights; or (3) when a local government official with final policy-making authority ratifies a subordinate's unconstitutional conduct." Brown v. Contra Costa Cty., No. C 12-1923 PJH, 2014 WL 1347680, at *8 (N.D. Cal. Apr. 3, 2014) (citing Clouthier v. Cty. of Contra Costa, 591 F.3d 1232, 1249-50 (9th Cir. 2010)). Whichever theory is alleged, the plaintiff must plead facts showing that "the policy is the moving force behind the constitutional violation." Dougherty v. City of Covina, 654 F.3d 892, 900-01 (9th Cir. 2011); see also City of Oklahoma v. Tuttle, 471 U.S. 808, 823 (1985) ("At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged."). Further, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." Tuttle, 471 U.S. at 823-24.

A Monell claim requires more than "sporadic" incidents. See Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents."). An "isolated instance ... is insufficient evidence of a 'policy statement, ordinance, regulation, or decision officially adopted and promulgated by' the County." Marsh v. County of San Diego, 680 F.3d 1148, 1159 (9th Cir. 2012) (internal citations omitted). Plaintiff's Monell claim against the Fresno County Jail appears to be based on the denial of asthma inhalers inside the detainee's cell. Here, Plaintiff has alleged nothing more than sporadic incidents of denial in receiving asthma treatment. While the Fresno County Jail may have a policy that prohibits detainees from having an asthma inhaler inside the cell, it is clear that asthma treatment is otherwise available and provided to detainees.

2. Inadequate Medical Care as to Individual Defendants

Plaintiffs also bring claims for inadequate medical care against officer Vang, nurse Smith, the infirmary doctor (name unknown), and infirmary nurse (name unknown) in their individual capacities. Plaintiff's allegations are insufficient to state a claim as to because there are no allegations that Plaintiff never received an inhaler, or that Plaintiff, in the opinion of medical professionals, suffered

5

from an emergency condition. That an individual correctional officer or medical official denies a request for an inhaler on a particular date does not, of itself, subject him/her to liability. Plaintiff fails to allege that he was injured as the result of not receiving an inhaler on a particular day. Plaintiff also fails to allege any facts indicating that he was seen by a medical professional and was diagnosed as suffering physical injury from not receiving an inhaler when he demanded it. Plaintiff's allegations demonstrate that he was advised of the procedure on how to receive access to an inhaler and he was provided access thereto. Even if there were some delay, the delays were short and at most negligent. Accordingly, Plaintiff fails to state a cognizable claim for relief.

### B.     Americans with Disabilities Act (ADA)

To the extent Plaintiff attempts to bring a claim under the ADA, such claim fails.

To state a claim under Title II of the ADA, the plaintiff must allege that:

> (1) he "is an individual with a disability;" (2) he "is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;" (3) he "was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (4) "such exclusion, denial of benefits, or discrimination was by reason of [his] disability."

McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004) (alteration in original) (quoting Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002)); Weinreich v. Los Angeles Cnty. Metro. Transp. Auth., 114 F.3d 976, 978 (9th Cir. 1997). "[I]nsofar as Title II [of the ADA] creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." United States v. Georgia, 546 U.S. 151, 159 (2006) (emphasis in original). The Supreme Court has held that Title II of the ADA applies to state prisons. Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 209-10 (1998).

While the Rehabilitation Act has the additional requirement that the program or activity receive federal funds, 29 U.S.C. § 794, "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the RA. Thus, courts have applied the same analysis to claims brought under both statutes," Zukle v. Regents of the Univ. of Cal., 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) (internal citations omitted).

Plaintiff has failed to demonstrate that he qualifies as disabled under the ADA because of the lack of an asthma inhaler inside his cell, and that as a result of these disabilities, he was denied access to programs and services.  Even assuming that Plaintiff's chronic bronchial asthma qualifies as a disability under the ADA, Plaintiff has not submitted facts to determine that he was excluded from or denied benefits provided by Fresno County Jail's services, programs, or activities because of such disability, versus the mere denial of an inhaler.  Plaintiff also fails to demonstrate that he was denied a reasonable accommodation as it is clear he could request and receive access to an inhaler and/or breathing treatments. The ADA does not provide a claim for inadequate medical treatment.  Patterson v. Allen, 787 Fed. Appx. 475, 476 (9th Cir. Dec. 13, 2019) (quoting Simmons v. Navajo County, 609 F.3d 1011, 1022 (9th Cir. 2011).  Accordingly, Plaintiff fails to state a cognizable claim under the ADA.  Although it appears that unlikely that Plaintiff can amend the complaint to state a cognizable claim, in an abundance of caution, the Court will grant Plaintiff one final opportunity to amend the complaint, if he can do so in good faith.

## IV.

## CONCLUSION AND ORDER

For the reasons discussed, Plaintiff fails to state a cognizable claim for relief and shall be granted leave to file an amended complaint to cure the deficiencies identified in this order, if he believes he can do so in good faith.  See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

Plaintiff's second amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79.  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ."  Twombly, 550 U.S. at 555 (citations omitted).  Further, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George, 507 F.3d at 607 (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey v. Maricopa Cnty., 693 F.3d 896, 927 (9th Cir. 2012).  Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

///

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;
2. Within thirty (30) days from the date of service of this order, Plaintiff shall file a second amended complaint;
3. Plaintiff's second amended complaint shall not exceed twenty-five (25) pages in length; and
4. If Plaintiff fails to file a second amended complaint in compliance with this order, the Court will recommend to a district judge that this action be dismissed consistent with the reasons stated in this order.

IT IS SO ORDERED.

Dated: **March 8, 2022**

UNITED STATES MAGISTRATE JUDGE