1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILLIP SANDERS, | Case No. 1:20-cv-00634-JLT-SAB |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF SECOND AMENDED COMPLAINT |
| v. | (ECF No. 30) |
| MARGARET MIMS, et al., | |
| Defendants. | **OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

## I.

## BACKGROUND

Phillip Sanders ("Plaintiff"), a pretrial detainee proceeding *pro se*, filed the complaint in this action on May 4, 2020. (ECF No. 1.) The action was initially assigned to Magistrate Judge Gary Austin as a prisoner civil rights case. Plaintiff was granted *in forma pauperis* status on June 1, 2020. (ECF No. 5.) On August 9, 2021, Judge Austin issued an order directing the Clerk of the Court to administratively re-designate this action as a 440 Civil Action, and the action was reassigned to Magistrate Judge Stanley A. Boone. (ECF Nos. 8, 9.)

On August 11, 2021, the Court screened Plaintiff's complaint and granted leave to amend. (ECF No. 10.) On September 9, 2021, the Court granted Plaintiff's motion for a 45-day extension

1   of time to file an amended complaint.  (ECF Nos. 11, 12.)  On October 22, 2021, the Court

2   granted Plaintiff's motion for a further 30-day extension of time to file an amended complaint.

3   (ECF Nos. 13, 14.)  On November 30, 2021, the Court granted Plaintiff's motion for an extension

4   of time in part, granting a further 30-day extension.  (ECF Nos. 19, 20.)

5          On January 3, 2022, Plaintiff filed a first amended complaint.  (ECF No. 22.)  On March

6   8, 2022, the Court issued a second screening order granting Plaintiff one final opportunity to file a

7   second amended complaint.  (ECF No. 27.)  On April 13, 2022, the Court granted Plaintiff's

8   request for a 60-day extension of time to file an amended complaint.  (ECF Nos. 28, 29.)

9          On June 13, 2022, Plaintiff filed a second amended complaint.  (ECF No. 30.)  Plaintiff

10  also filed a memorandum in support of the amended complaint.  (ECF No. 31.)  Plaintiff's second

11  amended complaint is currently before the Court for screening.

12                                              **II.**

13                            **SCREENING REQUIREMENT**

14         The Court is required to screen complaints brought by prisoners seeking relief against a

15  governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

16  Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

17  "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that

18  "seek[] monetary relief against a defendant who is immune from such relief."  28 U.S.C. §

19  1915(e)(2)(B).

20         A complaint must contain "a short and plain statement of the claim showing that the

21  pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

22  required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

23  conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell

24  Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Moreover, Plaintiff must demonstrate

25  that each defendant personally participated in the deprivation of Plaintiff's rights.  Jones v.

26  Williams, 297 F.3d 930, 934 (9th Cir. 2002).

27         Prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings

28  liberally construed and to have any doubt resolved in their favor.  Wilhelm v. Rotman, 680 F.3d

2

1113, 1121 (9th Cir. 2012) (citations omitted).  To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. at 678–79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

### III.

### COMPLAINT ALLEGATIONS

#### A.    Primary Factual Allegations

Plaintiff names the following Defendants: (1) Sheriff Margaret Mims ("Mims"), in an official capacity; (2) Edward Moreno ("Moreno"), proffered to be Direct of the Department of Public Health; (3) Nurse Janet Smith ("Smith"); (4) Correctional Officer Vang ("Vang"); and (5) unknown infirmary nurses and doctor.  (SAC at 1, 5-6.)

Plaintiff first proffers he is bringing this action as a pretrial detainee alleging intentional infliction of emotional distress and mental anguish that could have led to death as a result of Fresno County Jail officials' systemic failure to provide minimally adequate medical care to prisoners with disabilities.  (SAC at 1.)  Plaintiff also brings this action pursuant to the Eighth and Fourteenth Amendments.  (SAC at 6-7.)

On April 20, 2018, Plaintiff was booked into the Fresno County Jail and surrendered all of his personal property.  (SAC at 3.)  A medical assessment was conducted by registered nurse Smith before Plaintiff was assigned to a bunk.  During the assessment, Plaintiff explained he was on social security disability for degenerative disc disease as well as bronchial asthma, and that Plaintiff's medical history should be in the computer from his previous arrests.

During the interview, Plaintiff requested pain medication for degenerative disc pain as well as an asthma inhaler.  Smith reviewed the medical history and added the pain medication to his chart so that Plaintiff could receive his normal dosage.  Smith then advised Plaintiff that asthma "pumps' were no longer issued to inmates because of misuse, and Plaintiff was advised if

he had any tightening in the chest and needed treatment to inform the floor officer and request a breathing treatment at the infirmary.

As a result of the excitement of the arrest, Plaintiff requested to go to the infirmary during the medical interview and received an oxygen level test from an unknown nurse, showing around ninety percent (90%) and a "breathing treatment without any doctor's examination."  (SAC at 3.)  After Plaintiff returned to his bunk, he received his pain medication during medical call but he was not provided asthma medication.  Plaintiff proffers Smith did not enter the asthma inhaler prescription into the booking medical computer.

Almost every other night, Plaintiff began to get a tightness in his chest and went to the infirmary for numerous breathing treatments.  At first Plaintiff thought it was because of excitement of the unlawful arrest or knowing the probation violation would be dropped.  Plaintiff later discovered that the wool blankets triggered his asthma after speaking with other inmates.

On or around April 25, 2018, Plaintiff filed an inmate request slip requesting an inhaler and a non-wool blanket.  After getting no response for two days, a second incident happened on April 27, 2018, with correctional officer Vang.  On this date, the count took an extremely long time to clear as there was a riot on the fourth level between two rival gangs causing movement to be restricted on all levels.  Plaintiff made numerous attempts to go to the infirmary on April 27, 2018, and officer Vang told Plaintiff the infirmary was completely full and because of the riot he had to wait.  When Plaintiff went to the infirmary all the cells were empty and medical staff said they had little to no inmates in the cell for hours.  Plaintiff alleges Vang deliberately lied, and at another point states: "Vang was intentionally lying seemingly tired from working a double shift just didn't care so I filed a grievance."  (SAC at 4:19-20.)  Plaintiff had to wait while suffering tightness in his chest, contributing to mental anguish and emotional distress.  Plaintiff was seen by an unknown nurse without a doctor's examination, and completed an oxygen level test and breathing treatment.

On April 29, 2018, Plaintiff filed a grievance concerning April 20 and 27, 2018, and requesting that an inhaler be placed in the lock box on every floor.  After the grievance was filed, the infirmary doctor "seemingly in retaliation" called Plaintiff demanding a chest x-ray on or

4

about May 1, 2018, "intended to determine if I was faking."  When the result of the x-rays were reviewed, the doctor called Plaintiff to the office and determined that Plaintiff had narrow passages for which the doctor prescribed another breathing treatment and inhaler to be placed on the medical chart for daily medical call medication treatment.  Thus, Plaintiff states it took almost eleven days for the jail to confirm what was already in his medical record or could have been confirmed through his social security disability doctors.

To make things worse, Plaintiff states that when he returned to the cell that day, 3 hours went by and an unknown nurse came, but the nurse forgot to put the inhaler prescription on the medical cart and the nurse "expressed his sympathy said I'm sorry and told me he would be back soon as he finished" his rounds, "somewhat reckless because the RN should have went right to the inhaler he forgot," but Plaintiff waited in the day room for around one and a half hours.  (SAC 4-5.)  While waiting, a fight broke out and everyone was ordered to the ground.  A female officer utilized pepper spray to break up the fight which instantly triggered Plaintiff's asthma.  When Plaintiff returned to his cell he repeatedly pushed the medical alert button telling the officer in the cage he had asthma needed a pump.  After about thirty minutes the nurse that forgot the inhaler provided Plaintiff with his inhaler.

## B.    Other Attachments and Statements

Plaintiff avers to a previous class action against the same Defendants, arguing there they were found to create conditions that violated rights to medical care, and inmates were not provided reasonable accommodations for their disabilities, 1:11-cv-02047-LJO-BAM (now 1:11-cv-02047-JLT-BAM).  (SAC at 1.)  Plaintiff proffers Defendants have made little progress since that case.

Plaintiff attaches an email dated March 23, 2022, between him and an employee of the Fresno County Sheriff's Office.  Therein, the office responds to an email, stating: "I see that you were in custody in April of 2018 and then released on May 2, 2018.  Our medical provider at the time (Corizon) did not issue inhalers during intake/booking.  However, they would provide an inhaler upon request.  Per our records, you made a request on 4/20/18 and then received an inhaler on 4/21/18.  This met our 24 hour requirement upon the receipt of your request.  The good

1  news is our new medical provider (Wellpath) _does_ issue inhalers at intake/booking so inmates no

2  longer need to make a formal request."  (SAC at 2.)

3  **IV.**

4  **DISCUSSION**

5  **A.      Denial of Medical Treatment**

6  A pretrial detainee's rights arise under the Fourteenth Amendment's Due Process Clause

7  whereas a convicted prisoner's rights arise under the Eighth Amendment's Cruel and Unusual

8  Punishments Clause.  See Bell v. Wolfish, 441 U.S. 520, 535 (1979).  A deliberate indifference

9  test applies to both a pretrial detainee's claim and a prisoner's claim, but for a pretrial detainee it

10  is an objective test, rather than the subjective test which applies to a prisoner's claim.  See

11  Gordon v. County of Orange, 888 F.3d 1118, 1122 & n.4 (9th Cir. 2018).  A "pretrial detainee

12  need not prove those subjective elements about the officer's actual awareness of the level of risk."

13  Id. (quoting Castro v. Cnty. of Los Angeles, 833 F.3d 1060, 1071 (9th Cir. 2016)).  Because

14  Plaintiff claims involves the conditions at the Fresno County Jail as a pretrial detainee, the Court

15  applies the objective deliberate indifference standard.  Under this standard, a pretrial detainee

16  must allege:

17
18  (i) the defendant made an intentional decision with respect to the
conditions under which the plaintiff was confined; (ii) those
conditions put the plaintiff at substantial risk of suffering serious

19  harm; (iii) the defendant did not take reasonable available measures
to abate that risk, even though a reasonable official in the
circumstances would have appreciated the high degree of risk

20  involved—making the consequences of the defendant's conduct
obvious; and (iv) by not taking such measures, the defendant caused

21  the plaintiff's injuries.

22  Gordon, 888 F.3d at 1125.  With regard to the third element, the defendant's conduct must be

23  objectively unreasonable —"a test that will necessarily turn[ ] on the facts and circumstances of

24  each particular case."  Id. (internal citations and internal quotation marks omitted).  A "mere lack

25  of due care by a state official does not deprive an individual of life, liberty, or property under the

26  Fourteenth Amendment."  Id.  (quotations and citations omitted).  Thus, the plaintiff must "prove

27  more than negligence but less than subjective intent—something akin to reckless disregard."  Id.

28

1          1.       Monell Claim for Inadequate Medical Care

2          A local government unit may not be held responsible for the acts of its employees under a

3  *respondeat superior* theory of liability.  Monell v. Department of Social Services, 436 U.S. 658,

4  691 (1978).  Rather, a local government unit may only be held liable if it inflicts the injury

5  complained of through a policy or custom.  Waggy v. Spokane County Washington, 594 F.3d

6  707, 713 (9th Cir. 2010).  Generally, to establish municipal liability, the plaintiff must show that a

7  constitutional right was violated, the municipality had a policy, that policy was deliberately

8  indifferent to plaintiff's constitutional rights, and the policy was "the moving force" behind the

9  constitutional violation.  Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 400

10  (1997); Burke v. County of Alameda, 586 F.3d 725, 734 (9th Cir. 2009); Gibson v. County of

11  Washoe, Nev., 290 F.3d 1175, 1185-86 (9th Cir. 2002).  "The custom or policy must be a

12  'deliberate choice to follow a course of action . . . made from among various alternatives by the

13  official or officials responsible for establishing final policy with respect to the subject matter in

14  question.' "  Castro v. Cty. of Los Angeles, 833 F.3d 1060, 1075 (9th Cir. 2016) (quoting

15  Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986)).

16          There can be no municipal liability without an underlying constitutional violation.  Scott

17  v. Henrich, 39 F.3d 912, 916 (9th Cir. 1994).  A Monell claim can proceed under three theories of

18  municipal liability: "(1) when official policies or established customs inflict a constitutional

19  injury; (2) when omissions or failures to act amount to a local government policy of deliberate

20  indifference to constitutional rights; or (3) when a local government official with final policy-

21  making authority ratifies a subordinate's unconstitutional conduct."  Brown v. Contra Costa Cty.,

22  No. C 12-1923 PJH, 2014 WL 1347680, at *8 (N.D. Cal. Apr. 3, 2014) (citing Clouthier v. Cty.

23  of Contra Costa, 591 F.3d 1232, 1249-50 (9th Cir. 2010)).  Whichever theory is alleged, the

24  plaintiff must plead facts showing that "the policy is the moving force behind the constitutional

25  violation."  Dougherty v. City of Covina, 654 F.3d 892, 900-01 (9th Cir. 2011); see also City of

26  Oklahoma v. Tuttle, 471 U.S. 808, 823 (1985) ("At the very least there must be an affirmative

27  link between the policy and the particular constitutional violation alleged.").  Further, "[p]roof of

28  a single incident of unconstitutional activity is not sufficient to impose liability under Monell,

7

unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." Tuttle, 471 U.S. at 823-24.

A Monell claim requires more than "sporadic" incidents. See Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents."). An "isolated instance ... is insufficient evidence of a 'policy statement, ordinance, regulation, or decision officially adopted and promulgated by' the County." Marsh v. County of San Diego, 680 F.3d 1148, 1159 (9th Cir. 2012) (internal citations omitted). To the extent Plaintiff is alleging a Monell claim against the Fresno County Jail or through Sheriff Mims, the claim appears to be based on the denial of asthma inhalers inside the detainee's cell. Here, Plaintiff has alleged nothing more than sporadic incidents of denial in receiving asthma treatment, that aside from the allegation against Vang, appears to only be a statement from Smith about the policy and perhaps not entering Plaintiff's request in the computer before informing him he needs to go to the infirmary for asthma treatment, and a mistake by an unknown nurse who apologized when they forgot placing the medication on the tray, resulting in a delay. While the Fresno County Jail may have a policy that prohibits detainees from having an asthma inhaler inside the cell, it is clear that asthma treatment is otherwise available and provided to detainees. Plaintiff concedes that immediately upon intake, Plaintiff was granted a request to go to the infirmary where he received an oxygen level test and a breathing treatment.

2.    Inadequate Medical Care as to Individual Defendants

Plaintiff also brings claims for inadequate medical care against officer Vang, nurse Smith, the infirmary doctor (name unknown), and infirmary nurse (name unknown) in their individual capacities. Plaintiff's allegations are insufficient to state a claim because there are no allegations that Plaintiff never received an inhaler, or that Plaintiff, in the opinion of medical professionals, suffered from an emergency condition. That an individual correctional officer or medical official denies a request for an inhaler on a particular date does not, of itself, subject him/her to liability. Plaintiff fails to allege that he was injured as the result of not receiving an inhaler on a particular day, aside from averring to emotional distress, which the Court discusses below. Plaintiff also

1   fails to allege any facts indicating that he was seen by a medical professional and was diagnosed

2   as suffering physical injury from not receiving an inhaler when he demanded it.   Plaintiff's

3   allegations demonstrate that he was advised of the procedure on how to receive access to an

4   inhaler and he was provided access thereto.  Even if there were some delay, the delays were short

5   and at most negligent.  As for Vang, Plaintiff admits it appeared to stem from a lack of care or

6   overwork, and Plaintiff does not dispute the occurrence of the riot on that date, which was one of

7   the reasons Vang provided.

8          Accordingly, Plaintiff fails to state a cognizable claim for relief.

9          **B.     Americans with Disabilities Act (ADA)**

10         To the extent Plaintiff attempts to bring a claim under the ADA, such claim fails.  To state

11  a claim under Title II of the ADA, the plaintiff must allege that:

12              (1) he "is an individual with a disability;" (2) he "is otherwise
                qualified to participate in or receive the benefit of some public
13              entity's services, programs, or activities;" (3) he "was either
                excluded from participation in or denied the benefits of the
14              public entity's services, programs, or activities, or was
                otherwise discriminated against by the public entity;" and (4)
15              "such exclusion, denial of benefits, or discrimination was by
                reason of [his] disability."
16

17  McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004) (alteration in original) (quoting

18  Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002)); Weinreich v. Los Angeles Cnty. Metro.

19  Transp. Auth., 114 F.3d 976, 978 (9th Cir. 1997).  "[I]nsofar as Title II [of the ADA] creates a

20  private cause of action for damages against the States for conduct that *actually* violates the

21  Fourteenth Amendment, Title II validly abrogates state sovereign immunity."  United States v.

22  Georgia, 546 U.S. 151, 159 (2006) (emphasis in original).  The Supreme Court has held that Title

23  II of the ADA applies to state prisons.  Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 209-10 (1998).

24         While the Rehabilitation Act has the additional requirement that the program or activity

25  receive federal funds, 29 U.S.C. § 794, "[t]here is no significant difference in analysis of the

26  rights and obligations created by the ADA and the RA.  Thus, courts have applied the same

27  analysis to claims brought under both statutes."  Zukle v. Regents of the Univ. of Cal., 166 F.3d

28  1041, 1045 n.11 (9th Cir. 1999) (internal citations omitted).

1   Plaintiff has failed to demonstrate that he qualifies as disabled under the ADA because of his

2   asthma and lack of an asthma inhaler inside his cell, and that as a result of these disabilities, he

3   was denied access to programs and services.  Even assuming that Plaintiff's chronic bronchial

4   asthma qualifies as a disability under the ADA, Plaintiff has not submitted facts to determine that

5   he was excluded from or denied benefits provided by Fresno County Jail's services, programs, or

6   activities because of such disability, versus the mere denial of an inhaler.  Plaintiff also fails to

7   demonstrate that he was denied a reasonable accommodation as it is clear he could request and

8   receive access to an inhaler and/or breathing treatments.  The ADA does not provide a claim for

9   inadequate medical treatment.  Patterson v. Allen, 787 Fed. Appx. 475, 476 (9th Cir. Dec. 13,

10  2019) (quoting Simmons v. Navajo County, 609 F.3d 1011, 1022 (9th Cir. 2011)); Morris v.

11  California, No. 21-16059, 2022 WL 2901730, at *1 (9th Cir. July 22, 2022) ("While Title II of

12  the ADA cannot be used to litigate medical malpractice claims or inadequate treatment claims,

13  '[a] failure to provide reasonable accommodation can constitute discrimination.' ") (quoting

14  Vinson v. Thomas, 288 F.3d 1145, 1154 (9th Cir. 2002)).

15          Accordingly, Plaintiff fails to state a cognizable claim under the ADA.

16          **C.      Intentional Infliction of Emotional Distress**

17          Plaintiff avers to claims relating to mental anguish and intentional infliction of emotional

18  distress.

19          The elements for a claim of intentional infliction of emotional distress under California

20  law are: "(1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of

21  the probability of causing emotional distress, (3) severe emotional suffering, and (4) actual and

22  proximate causation of the emotional distress."  Wong v. Tai Jing, 189 Cal.App.4th 1354, 1376

23  (2010) (quoting Agarwal v. Johnson, 25 Cal.3d 932, 946 (1979)).  Conduct is "outrageous if it is

24  'so extreme as to exceed all bounds of that usually tolerated in a civilized community.' "  Simo v.

25  Union of NeedleTrades, Industrial & Textile Employees, 322 F.3d 602, 622 (9th Cir. 2002)

26  (quoting Saridakis v. United Airlines, 166 F.3d 1272, 1278 (9th Cir. 1999)).  The emotional

27  distress must be "of such a substantial quantity or enduring quality that no reasonable man in a

28  civilized society should be expected to endure it."  Simo, 322 F.3d at 622.

10

The Court finds Plaintiff has not stated sufficient facts pertaining to any named Defendant or unnamed individual that would rise to the level of intentional infliction of emotional distress.

## V.

## RECOMMENDATION

The Court previously noted that although it appeared unlikely that Plaintiff could amend the complaint to state a cognizable claim, in an abundance of caution, the Court granted Plaintiff one final opportunity to amend the complaint, if he could do so in good faith.  (ECF No. 27 at 7.)

Upon review of the second amended complaint, the factual allegations are essentially the same, and the Court finds Plaintiff has not cured the previously identified pleading defects. Because Plaintiff was granted an opportunity to amend but appears unable to cure the previously identified pleading defects, the Court recommends Plaintiff's amended complaint be dismissed without leave to amend and that this action be dismissed.  See Gardner v. Martino, 563 F.3d 981, 990 (9th Cir. 2009) ("When a proposed amendment would be futile, there is no need to prolong the litigation by permitting further amendment."); see also Ecological Rights Found. v. Pac. Gas & Elec. Co., 713 F.3d 502, 520 (9th Cir. 2013) (holding the court's discretion to deny leave to amend is "particularly broad" where the plaintiff has previously amended his complaint).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1.       Plaintiff's second amended complaint, (ECF No. 30), be DISMISSED, with prejudice and without leave to amend; and

2.       The Clerk of the Court be directed to CLOSE this case.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen (14) days** of service of these recommendations, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __January 20, 2023__

_____

UNITED STATES MAGISTRATE JUDGE